IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:03CV150-1-MU

| | |
|---|---|
| JEFFREY KENT WITSCHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| WILKES COUNTY, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** comes before the Court upon Defendants Mastin and Huffman's Motion for Summary Judgment, filed October 11, 2005.

## FACTUAL BACKGROUND

In his Complaint Plaintiff alleges that Defendant Huffman[1] assaulted him with a stink bomb. Plaintiff further alleges that on or about October 2, 2002, he was shot by Defendant Walters. Plaintiff alleges that although he was a fugitive he was not armed and did not make any threatening motions. Plaintiff states that although Defendant Walters is a convicted felon the sheriff's department gave him permission to carry a gun and told him to shoot Plaintiff. Plaintiff further alleges that deputies from the sheriff's department assured Defendant Walters that no charges would be brought against him for shooting Plaintiff. Plaintiff alleges that he has suffered extensive injuries to his leg. He seeks one million dollars each from Defendants Mastin, Huffman, and Walters.

---

[1] Defendant Landon Huffman was originally incorrectly referred to as Officer Landen in the Complaint.

# LEGAL ANALYSIS

## I. STINK BOMB ALLEGATION

As noted above, Plaintiff alleged in his Complaint that on several occasions while he was incarcerated at the Wilkes County Jail, Defendant Huffman assaulted him and other inmates with stink bombs and that these incidents caused him "major duress." In his deposition, Plaintiff testified that on three separate occasions Defendant Huffman threw a small glass vial containing a chemical compound into the close custody area of the jail where Plaintiff was incarcerated. (Pl. Dep. Pp. 13, 19-20, 24-25). According to Plaintiff, on each occasion, the breaking of the glass vial created a foul odor which upset and offended him. Plaintiff admitted, however, that in none of these incidents did he, or any other inmate, become nauseous or ill. (Pl. Dep. pp. 17, 23, 29).

Defendant Huffman denies any involvement in the stink bomb incidents alleged in the Complaint and discussed in Plaintiff's deposition. However, for the sake of the Motion for Summary Judgment, Defendants argue that even if Defendant Huffman engaged in such sophomoric behavior, the behavior, as described by Plaintiff himself, simply does not rise to the level of a constitutional violation.

The United States Supreme Court has held that "the Constitution 'does not mandate comfortable prisons' but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment prohibition against cruel and unusual punishment requires that prison officials provide "humane conditions of confinement" including "adequate food, clothing, shelter, and medical care." Id. To prevail on a claim that conditions of confinement constitute a constitutional deprivation, a plaintiff must demonstrate that those conditions fall below the "minimal civilized measures of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

A two-pronged showing is necessary to demonstrate a prima facie constitutional violation with respect to jail or prison conditions: (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of the prison officials. See Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991); Wilson v. Seiter, 501 U.S. 294, 303 (1991). Plaintiff's Complaint and deposition testimony make clear that he cannot even establish the first prong. In his deposition Plaintiff testified with regard to the first alleged stink bomb incident "we all thought it was rude but none of us complained about it . . . we just forgot about it and let it ride." (Pl. Dep. p. 13). He also stated about this incident that no one got sick but that some inmates, not including himself, got upset about. (Pl. Dep. p. 17). With regard to the second alleged stink bomb incident Plaintiff testified that "nobody got physically sick, but nobody ate their breakfast that morning" but the inmates "did get very angry." (Pl. Dep. pp. 20, 23). With regard to the third alleged stink bomb incident, Plaintiff again testified that he did not get physically sick. (Pl. Dep. p. 29). Plaintiff's allegations clearly do not set forth that he suffered serious injury as a result of these alleged incidents. See Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993)("in order to withstand summary judgment on an Eighth Amendment challenge to prison conditions, a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions.").

Plaintiff has alleged, at most, conduct which was inappropriate and unwise. He has not, however, alleged conduct which rises to the level of a constitutional violation. As such, Plaintiff's stink bomb claim is dismissed.

## II. THE SHOOTING

### A. Sheriff Mastin

While hiding in his estranged wife's house as an escaped convict, Plaintiff was shot two or three times by Defendant Walters, a private citizen. Plaintiff has sued Sheriff Mastin alleging he should be held liable under § 1983. Plaintiff's basis for arguing Defendant Mastin should be liable is that "he controls the actions and he's responsible for all the actions of his sheriffs and everyone working under him. So he's responsible." (Pl. Dep. p. 78). Plaintiff admitted in his deposition that as of the date of the deposition he did not have any evidence that Defendant Mastin did, said or knew anything specifically about what happened in that incident. (Pl. Dep. pp. 79-80).

Supervisory liability under § 1983 may not be predicated only on the theory of respondeat superior. See Vinnedge v. Gibbs, 550 F.2d 926, 929 (4th Cir. 1977). Section 1983 requires a showing of personal fault on the part of a defendant either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs. See Fisher v. Washington Metropolitan Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982).

As admitted to by Plaintiff in his deposition, he does not allege any personal conduct by Defendant Mastin which would render him liable. (Pl. Dep. pp. 79-80). Consequently, in order to prevail on his claim, Plaintiff must successfully establish that Defendant Mastin is liable as a result of the implementation of his policies or customs. Plaintiff, not surprisingly, fails to establish or even allege that Defendant Mastin had a custom or policy of allowing private citizens to shoot fugitives. Consequently, the Court concludes that Defendant Mastin cannot be found liable on the facts before this Court.

**B. Defendant Walters**

Plaintiff also alleges a claim against Defendant Walters stating that Defendant Walters, a private citizen, shot him twice while he was in his estranged wife's home during his escape from the

Wilkes County Jail subsequent to his sentencing for taking indecent liberties with his daughters. Plaintiff contends that the Wilkes County Sheriff's office gave Defendant Walters permission to carry a gun and to shoot him. Although Defendant Walters has not yet been served, the Court concludes, based upon all the evidence before it, that Plaintiff fails to state a claim against Defendant Walters. In order to state a claim under 42 U.S.C. § 1983, a Plaintiff must establish that one of his constitutional rights (or federal statutory rights) was violated by a person acting under the color of state law. 42 U.S.C. § 1983. It is essential to Plaintiff's claim therefore that he establish that Defendant Walters, a private citizen, was acting under the color of state law.

The concept of joint action between a citizen and a state rising to the level of § 1983 liability was addressed by the United States Supreme Court in Lugar v. Edmondson Oil. Co., 457 U.S. 922 (1982). Based upon the principles set forth in Lugar, the United States Court of Appeals for the Fourth Circuit has recognized four exclusive circumstances in which a private party can be deemed to be a state actor. These circumstances are: (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen." See DeBauche v. Trani, 191 F.3d 499 (4th Cir. 1999).

In the case at bar, Plaintiff's allegations as set forth in his Complaint and deposition testimony are insufficient to satisfy any of the above-mentioned tests so as to qualify Defendant Walters as a state actor. The facts merely establish that, at most, some sheriff's deputies assured

Defendant Walters after the shooting that he was justified in shooting Plaintiff.[2] Such statements made after the fact clearly did not make Defendant Walters a state actor at the time of the shootings.

Consequently, this Court concludes that Plaintiff has failed to state a claim against Defendant Walters and he is dismissed from this case. 28 U.S.C. § 1915(e)(1) ("the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . .").

**IT IS THEREFORE ORDERED THAT**:

1. Defendants Mastin and Huffman's Motion for Summary Judgment is **GRANTED** and they are dismissed from this case;

2. Defendant Walters is **DISMISSED** from this case; and

3. Plaintiff's Complaint is **DISMISSED**.

---

[2] The entire basis for Plaintiff's assertion that Defendant Walters should qualify as a state actor is an alleged comment made by one of the deputies to Defendant Walters that it was not inappropriate to shoot Plaintiff. Plaintiff testified that his only knowledge that this comment took place was a letter from Amy Walters, Defendant Walter's ex-wife, in which she stated that the "cop told Dan he could shoot you." (Pl. Dep. p. 65). Plaintiff asserts that this comment must have been made before the shooting therefore indicating that Defendant Walters was given permission to shoot him. (Pl. Dep. p. 65, 74). The facts simply do not support Plaintiff's admitted speculation. (Pl. Dep. p. 70). First a reading of the letter reveals that Plaintiff's interpretation of Ms. Walter's statement is attenuated at best. More importantly, in an affidavit filed as an exhibit to Defendants' Motion for Summary Judgment, Mrs. Walters, the individual who overheard the comment, states that this comment was made to Defendant Walters after he shot Plaintiff. (Walters Aff. ¶¶ 11-15). Indeed, Mrs. Walters did not arrive at the scene of the shooting until thirty minutes after the shooting and it was at that time that she heard the deputies reassure her husband that he would not be charged with the shooting because Plaintiff was a dangerous escaped felon and the shooting was warranted. (Walters Aff. ¶ 11). Consequently, the entire foundation for Plaintiff's assertion is simply not true.

**Signed: December 7, 2005**

Graham C. Mullen
Chief United States District Judge